UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PNC BANK, NATIONAL ASSOCIATION, a
national banking association,

        Plaintiff,

v.                                                       Case No. 11-14774
                                                       Honorable Denise Page Hood

TRILLIUM CIRCLE, LLC, a Michigan limited
liability company,
        Defendants.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR APPOINTMENT OF RECEIVER AND APPOINTING RECEIVER

**I.    INTRODUCTION**

This matter is before the Court on Plaintiff's Motion for Appointment of Receiver **[Docket No. 2, filed October 28, 2011]**. Plaintiff moves pursuant to Federal Rules of Civil Procedure 56 and 66 for the Court to immediately appoint McKinley, Inc. as receiver for the commercial development commonly known as "Trillium Circle" in Grand Blanc, Michigan. For the reasons stated below, Plaintiff's Motion for Appointment of Receiver is GRANTED.

**II.    BACKGROUND**

On October 28, 2011, PNC Bank, National Association ("PNC") filed the present action against Trillium Circle, LLC ("Trillium"). In its verified complaint, PNC alleged the following: Breach of the Notes (Count I); Judicial Foreclosure (Count II); and Appointment of Receiver (Count III).

On April 18, 2006, Trillium entered into a loan agreement with Trillium for the development ("Land Development Loan") and building construction ("Construction Loan") of

1

the Trillium Project. (Compl. ¶9). Trillium executed two separate notes: $22,225,000.00 for the Land Development Loan and $25,064,515.00 for the Construction Loan. (Compl. ¶¶10, 11). The Notes were secured by a Mortgage and assignment of rents. (Compl. ¶¶2, 13). The Note and assignment of rents were partially discharged on August 29, 2011. (Compl. ¶14, Ex. G).

Trillium defaulted on the loan agreement, Notes, and Mortgage on April 18, 2009 when it did not pay the balance due. (Compl. ¶15). PNC provided notice of the default on September 2, 2009. (Compl. ¶16).

On February 28, 2001, Genesee County Circuit Court entered a default judgment against Trillium in the case *Faught et al. v. Park et al.*, Case No. 10-94801-CZ. (Compl. ¶17). On May 23, 2011, in a "Special Meeting" of Trillium members, Danny Park was removed as the Manager of Trillium and Neal Porter and Mark Blevins replaced him. Danny Park did not sign the meeting minutes. (Compl. ¶ 18). On July 12, 2011, Mark Blevins, who personally guaranteed some of Trillium's obligations died. (Compl. ¶17).

A second default judgment was entered against Trillium by Genesee County Circuit Court on July 22, 2011 in the case *GH Real Estate Advisors, LLC v. Watermark Equities, LLC*, Case No. 09-92294-CK. (Compl. ¶ 17). As a result, GH Real Estate Advisors began to garnish Trillium rents in September 2011. (Compl. ¶17).

On September 23, 2011, PNC recorded a Notice of Default under Terms and Conditions of the Mortgage with Genesee County Register of Deeds. (Compl. ¶ 19). The Notice of Default was served on the tenants of the Trillium Project on September 28, 2011. (Compl. ¶ 20).

On September 30, Danny Park, who personally guaranteed some of Trillium's obligations, filed Chapter 7 bankruptcy. (Compl. ¶17).

As of October 27, 2011, PNC alleges the balances due on the Notes are as follows: Land Development Loan - $10,090,551.87 in principal and $71,583.85 in interest; and Construction Loan - $10,478,872.95 in principal and $46,635.09 in interest.

Trillium filed a supplemental brief on December 15, 2011, reporting that a settlement was reached between Trillium and G.H. Real Estate Advisors, LLC, setting aside the July 2011 judgment. The rents have been set aside in an IOLTA account and will be partially released to G.H. Real Estate and partially to PNC. (Pl.'s Supp. Br. Ex. A).

On December 20, 2011, PNC filed an emergency motion asking for a hearing or, in the alternative, appointment of a receiver without further hearing. PNC reported that Trillium was given notice in May 2010 that it was in violation of Michigan's soil erosion and sedimentation regulations. (Def.'s Emergency Mot., Ex. 1). The issues were not corrected. (Def.'s Emergency Mot. Ex. 2). On December 15, 2011, Trillium was informed that it had five days to come into compliance or it may be liable for a municipal civil infraction of up to $2,500, a civil fine of up to $25,000 per day, and/or the issuance of a *Cease and Desist* order placed on the entire property. (Def.'s Emergency Mot. Ex. 4). PNC indicates that it first learned of these facts on December 19, 2011.

**III.   ANALYSIS**

PNC seeks the immediate appointing of McKinley, Inc. as Receiver of Trillium Circle. PNC argues that it is unsure of who is managing Trillium Circle and contends that the instability of management diminishes the property's value. PNC also argues that Trillium has several judgments against it. PNC notes that McKinley is currently managing and operating Trillium, and is qualified to serve as receiver.

Trillium argues that its management is stable; Danny Park is no longer a manager at Trillium. It further argues that PNC has not shown any fraudulent activity. In its Supplemental Brief, Trillium notes that there is no longer a threat of further attachment of rents because it has settled with G.H. Real Estate. Trillium contends that the current oversight and management of Trillium is adequate especially given that PNC seeks to appoint McKinley, the same entity currently managing Trillium, as receiver.

Federal Rule of Civil Procedure 66 governs the appointment of a receiver. The district court's discretion to appoint a receiver may be exercised only when necessary to protect a plaintiff's interest in real property subject to the action. *See Guy v. Citizens Fidelity Bank & Trust, Co.*, 429 F.2d 828, 833-34 (6th Cir. 1970). Appointing a receiver is an equitable remedy that is only appropriate in extreme situations. *Meyer Jewelry Co. v. Meyer Holding, Inc.*, 906 F.Supp. 428, 432 (E.D. Mich. 1995). The Court may consider the following factors when determining whether to appoint a receiver: (1) the existence of a valid claim by the moving party; (2) the probability of that fraudulent conduct has or will occur to frustrate the claim; (3) imminent danger that property will be lost, concealed, or diminished in value; (4) inadequacy of legal remedies; (5) lack of a less drastic equitable remedy; and (6) the likelihood that appointment of a receiver will do more harm than good. Id.

First, PNC has satisfied the first factor. Trillium asserts that PNC has not provided any evidence that it has standing to sue on behalf of National City Bank of the Midwest. However, in its Verified Complaint, PNC indicates that is a successor in interest to National City Bank of the Midwest. Based on the Verified Complaint and other supporting materials, Trillium has defaulted on the loans, notes, and mortgage.

Second, PNC has not demonstrated that Trillium has engaged in any fraud or will engage in any fraud that may frustrate the claim. PNC only reports that it is unsure who is managing Trillium. PNC also expresses its concern that two default judgments were entered against Trillium and the rents, that PNC alleges it is entitled to, have been garnished by a judgment creditor. These facts do no demonstrate the presence or likelihood of future fraud.

Third, as to the diminishment of value, PNC notes its concern that rents it believes it is entitled are subject to garnishment by a judgment creditor and that it is unsure of the stability of Trillium's management. In its emergency motion, PNC further argues that Trillium is not in compliance with Michigan's Soil Erosion and Sedimentation Control regulations and Trillium may be subject to civil fines. Trillium was required to become compliant with the relevant regulations by December 20, 2011. Management appears to be stable: Trillium has indicated that Neal Porter is the Manager and McKinley, the very entity that PNC requests this Court appoint as receiver, is managing the property. Further, Trillium rents are no longer subject to garnishment pursuant to the settlement. However, Trillium's impending civil liability does demonstrate that the property is in imminent danger of diminished value. Although, PNC has initiated foreclosure proceedings, PNC's ability to recoup its alleged losses may be severely diminished by a substantial civil fine or a *Cease and Desist* order on the entire property.

Fourth, PNC has adequate legal remedies based on its present action for breach of contract and judicial foreclosure.

Fifth, PNC has met its burden in establishing that there is not a less drastic equitable remedy. Foreclosing on the property would be a more drastic remedy. Although PNC has requested judicial foreclosure in the present action, Trillium Circle has not yet been foreclosed upon. *See Federal National Mortgage Association v. Maple Creek Gardens*, *LLC*, 2010 WL

374033 (E.D. Mich. January 25, 2010) (unpublished) (finding that the appointment of a receiver was appropriate based on default and prior to foreclosure proceedings.)

Finally, as to the sixth factor, it appears that the appointment of a receiver will not do more harm than good. McKinley is already managing the property and it appears that Trillium is not arguing that such an appointment would cause more harm than good.

### IV. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Plaintiff's Motion for Appointment of Receiver **[Docket No. 2, filed October 28, 2011]** is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Emergency Motion for Continued Hearing on Pending Motion for Appointment of Receiver **[Docket No. 28, December 20, 2011]** is **DENIED.**

**IT IS FURTHER ORDERED** that:

1. Effective immediately upon entry of this Order, McKinley, Inc. (hereinafter "Receiver") is appointed as the Receiver of the following described property ("Property") of Defendant Trillium Circle, LLC ("Trillium"), on which PNC Bank, National Association ("PNC") holds a Mortgage ("Mortgage"):

> a. Real property in the Township of Grand Blanc, County of Genesee, State of Michigan, described as follows (the "Real Property"):
>
> Part of the Northwest 1/4 of Section 22, Town 6 North, Range 7 East, Grand Blanc Township, Genesee County, Michigan, described as beginning at a point on the West line of the East 1/2 of the Northwest 1/4 of said Section, said point being South 89 degrees 45 minutes 51 seconds West, along the South line of said East 1/2 of the Northwest 1/4, 1331.88 feet and North 00 degrees 35 minutes 00 seconds West, along said West line, 197.54 feet from the center of said Section 22; thence from said point of beginning continuing North 00 degrees 35 minutes 00 seconds West, along said West line, 73.10 feet; thence South 42 degrees 34 minutes 30

6

seconds West, 128.34 feet; thence on a curve to the left having a central angle of 03 degrees 32 minutes 50 seconds, a radius of 1948.63 feet and a long chord bearing and distance of South 40 degrees 48 minutes 05 seconds West, 120.62 feet; thence North 48 degrees 45 minutes 18 seconds West, 367.39 feet; thence North 00 degrees 35 minutes 00 seconds West, 960.20 feet; thence North 03 degrees 56 minutes 37 seconds West, 708.02 feet, thence South 88 degrees 56 minutes 46 seconds West, 35.86 feet; thence North 00 degrees 35 minutes 00 seconds West, 574.00 feet; thence North 88 degrees 56 minutes 46 seconds East, 519.00 feet; thence South 00 degrees 35 minutes 00 seconds East, 171.63 feet; thence North 89 degrees 33 minutes 30 seconds East, 1273.54 feet to the centerline of Holly Road (so-called); thence along said centerline; on a curve to the right having a central angle of 13 degrees 57 minutes 37 seconds, a radius of 1273.24 feet and a long chord bearing and distance of South 18 degrees 16 minutes 40 seconds West, 309.46 feet; thence continuing along said centerline South 25 degrees 15 minutes 29 seconds West, 437.72 feet; thence continuing along said centerline South 24 degrees 35 minutes 17 seconds West, 426.53 feet; thence North 76 degrees 44 minutes 54 seconds West, 169.48 feet; thence along a curve to the right having a central angle of 43 degrees 10 minutes 41 seconds, a radius of 538.00 feet, and long chord bearing and distance of South 39 degrees 05 minutes 43 seconds West, 395.91 feet; thence along a curve to the right having a central angle of 32 degrees 16 minutes 31 seconds, a radius of 50.00 feet, and a long chord bearing and distance of South 06 degrees 50 minutes 18 seconds West, 27.79 feet; thence South 50 degrees 45 minutes 50 seconds East, 106.63 feet; thence South 61 degrees 18 minutes 30 seconds East, 143.63 feet to said centerline of Holly Road; thence continuing on a curve to the right having a central angle of 13 degrees 14 minutes 26 seconds, a radius of 1909.76 feet and a long chord bearing and distance of South 35 degrees 57 minutes 18 seconds West, 440.34 feet; thence continuing along said centerline South 42 degrees 34 minutes 30 seconds West, 476.14 feet to the point of beginning.

EXCEPTING THEREFROM:

Part of the Northwest 1/4 of Section 22, Town 6 North, Range 7 East, Grand Blanc Township, Genesee County, Michigan.  The point of beginning for said parcel is as follows: Commencing at the center of said Section 22; thence South 89 degrees 45 minutes 51 seconds West, along the South line of the East 1/2 of said Northwest 1/4, 1331.88 feet; thence North 00 degrees 35 minutes 00 seconds West, along the West line of said East 1/2, 270.64 feet; thence South 42 degrees 34 minutes 30 seconds West, 128.34 feet; thence on a curve to the left having a central angle of 03 degrees 32 minutes 50 seconds, a radius of 1948.63 feet and a long chord bearing and distance of South 40 degrees 48 minutes 05 seconds West, 120.62 feet; thence North 48 degrees 45 minutes 18 seconds West,

        239.24 feet; thence North 42 degrees 20 minutes 00 seconds East, 81.54 feet; thence on a curve to the left having a central angle of 46 degrees 56 minutes 04 seconds, a radius of 490.00 feet and a long chord bearing and distance of North 32 degrees 44 minutes 58 seconds East, 390.26 feet; thence on a curve to the right having a central angle of 23 degrees 53 minutes 06 seconds, a radius of 580.00 feet; and a long chord bearing and distance of North 21 degrees 13 minutes 29 seconds East, 240.04 feet to said point of beginning for this parcel; thence on a curve to the right having a central angle of 12 degrees 08 minutes 26 seconds, a radius of 580.00 feet; and a long chord bearing and distance of North 39 degrees 14 minutes 15 seconds East 122.67 feet; thence North 50 degrees 45 minutes 05 seconds West, 59.29 feet; thence North 39 degrees 14 minutes 55 seconds East, 109.50 feet; thence South 50 degrees 45 minutes 05 seconds East, 21.33 feet; thence North 39 degrees 14 minutes 55 seconds East, 33.00 feet; thence South 50 degrees 45 minutes 05 seconds East, 8.76 feet; thence North 39 degrees 14 minutes 55 seconds East, 74.22 feet; thence North 50 degrees 45 minutes 05 seconds West, 76.10 feet; thence South 39 degrees 14 minutes 55 seconds West, 71.68 feet; thence North 50 degrees 45 minutes 05 seconds West, 37.66 feet; thence South 39 degrees 14 minutes 55 seconds West, 3.21 feet; thence North 50 degrees 45 minutes 05 seconds West, 82.67 feet; thence South 39 degrees 14 minutes 55 seconds West, 167.80 feet; thence 50 degrees 45 minutes 05 seconds West, 17.90 feet; thence South 39 degrees 14 minutes 55 seconds West, 70.73 feet; thence South 50 degrees 45 minutes 05 seconds East, 17.90 feet; thence South 39 degrees 14 minutes 55 seconds West, 167.80 feet; thence South 50 degrees 45 minutes 05 seconds East, 85.00 feet; thence North 39 degrees 14 minutes 55 seconds East, 10.00 feet; thence South 50 degrees 45 minutes 05 seconds East 35.00 feet; thence North 39 degrees 14 minutes 55 seconds East, 10.00 feet; thence South 50 degrees 45 minutes 05 seconds East, 29.50 feet; thence South 39 degrees 14 minutes 55 seconds West, 6.67 feet; thence South 50 degrees 45 minutes 05 seconds East, 16.83 feet; thence North 39 degrees 14 minutes 55 seconds East, 128.50 feet; thence South 50 degrees 45 minutes 05 seconds East, 59.32 feet to the point of beginning.

b.    All fixtures of every kind or nature located in or upon or attached to, or used or intended to be used in connection with the operation of, the Real Property and any buildings, structures, or improvements thereon.

c.    All the rent, royalties, issues, revenues, income, profits, and other benefits of the Real Property and the facilities thereon from operation of the Real Property.

d.    To the full extent transferable under applicable law, all permits, licenses, and other contracts pertaining to the Real Property and the operations of the Real Property.

2.	Trillium and its principals shall cooperate with the Receiver in the transition of the management of the Property and shall make available to the Receiver for inspection and copying all of their records concerning the Property as shall be reasonably necessary for the Receiver to fulfill its duties under the terms of this Order.

3.	Trillium and any third parties receiving notice of this Order shall surrender to the Receiver, to be placed into an escrow account to be established by the Receiver, all monies currently in their possession which belong or are payable to Trillium. In addition, Trillium and any third parties receiving notice of this Order shall surrender to the Receiver, to be placed into an escrow account to be established by the Receiver, all monies belonging to Trillium that may come into their possession from and after the date of this Order.

4.	Immediately upon entry of this Order and continuing until the termination of the Receiver's appointment as herein provided, the Receiver is authorized to take any reasonable and appropriate actions to prevent waste and to preserve, manage, maintain, secure, lease and safeguard the Property during the period of receivership. Without limiting the generality of the foregoing, the Receiver shall:

   a.	To the extent funds are available, pay such sums as are necessary for the preservation, upkeep, and security of the Property.

   b.	Allow the parties and their respective counsel access to the Property at reasonable times to inspect the Property.

   c.	Collect any unpaid or delinquent rents, revenues, issues, and profits, regardless of when accrued, and to prosecute collection or similar proceedings.

   d.	Pay all real estate and personal property taxes and any other taxes or assessments against the Property, as reasonable and necessary to avoid forfeiture or loss.

    e.  Enforce termination or approve any contracts and/or agreements regarding the Property, subject to Plaintiff's approval.

    f.  Sell all or any portion of the Property, after notice to all parties, a hearing, and approval by the Court.

  5.  The Receiver is authorized to exercise all rights reserved or granted to Trillium under the Mortgage, or under Michigan law.

  6.  The Receiver is authorized to investigate any previous transfers or financial transactions relating to the Property to determine whether any such transactions were fraudulent. The Receiver is also authorized to pursue recovery of any such fraudulent transfers in accordance with Michigan law.

  7.  The Receiver shall not be responsible for the preparation or filing of any tax returns for Trillium (including income, personal property, commercial activity, gross receipts, sales and use, or other tax returns) other than to provide Trillium with information in the Receiver's possession that may be necessary for Trillium to prepare and file tax returns.

  8.  The Receiver shall receive reasonable compensation for its services, payable from the escrow or other funds collected from operation of the Property.  The Receiver shall also be entitled to be reimbursed for reasonable out-of-pocket expenses related to the performance of its duties as Receiver.  The Receiver shall issue invoices, with copies to the parties to this action, through their respective counsel on a monthly basis.  The Receiver may receive payment on a monthly basis, without further Court Order, provided no objections are filed with the Receiver within seven days after such invoices are mailed to the parties' counsel.  In the event an objection is timely filed, the objecting party shall file a motion with the Court within seven days after objecting to determine the propriety of the fees sought, or its objections will be waived.

9. The Receiver shall purchase all necessary insurance relating to the Property, including, if necessary, fire, extended coverage, property damage, general and professional liability, title, and workers' compensation. To the extent permissible, the Receiver and PNC shall be named as additional insureds on all such existing policies and as mortgagee or as their interests otherwise appear on all such casualty policies, and Trillium shall reasonably cooperate with the Receiver in having the Receiver and PNC so named.

10. The Receiver is authorized to market and sell the Property by private sale free and clear of all claims, liens, and encumbrances without redemption periods, after notice to all parties and a hearing and approval by the Court. Any and all claims, liens, and encumbrances shall attach to the proceeds from any sale in the same rank, order and priority.

11. After notice to all parties, the Receiver is authorized to execute, modify, amend, extend or terminate leases regarding the Property, subject to PNC's approval.

12. The Receiver shall not be liable for any claim, obligation, liability, action, cause of action, cost, or expense of Trillium arising out of or relating to events or circumstances occurring prior to this Order, including, without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of Trillium, and any liability to which Trillium is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use, or operation of the Property (collectively, all of the foregoing is referred to as "Pre-Receivership Liabilities"). Except as otherwise stated herein, the Receiver shall not be obligated to pay any Pre-Receivership Liabilities.

13. The Receiver shall file with this Court and serve on the parties who have filed Appearances a monthly accounting of all receipts and disbursements concerning the performance

of its duties under this Order and a final monthly accounting within 30 days after termination of its appointment.

14.     The Receiver and its employees, agents, and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, except for claims due to their intentional tortious acts, breaches of fiduciary duty, gross negligence, gross or willful misconduct, acts committed in bad faith, malicious acts, and/or the failure to comply with this Court's Orders.  For purposes hereof, the Receiver shall be deemed a fiduciary for the benefit of all persons having or claiming an interest in the Property and shall exercise its duties accordingly.

15.     The Receiver is authorized, in its discretion, to operate the Property under any and all existing agreements that are currently in place between Trillium and any third party, but is not authorized to sell the Property to any third party or party without prior Court approval.

16.     The Receiver may be removed by Order of the Court upon a Motion for Cause.  If the Receiver is removed, a successor receiver can be appointed by a Stipulated Order on behalf of Trillium.  If these parties cannot agree, the Court shall appoint a successor receiver.

17.     This Court shall retain jurisdiction to resolve disputes under or related to this Order.  Unless otherwise ordered by this Court, the receivership shall terminate with respect to any of the Property upon the earliest of: (a) as to the property sold, pursuant to Court Order, as provided herein; (b) expiration of the statutory redemption period for the mortgage foreclosure sale for such Mortgaged Property; or (c) stipulation of the parties to this action.

18.     Until further Order of this Court, the parties, their agents and employees, and all other persons with notice of this Order (other than Receiver) are restrained and enjoined from directly or indirectly transferring, encumbering, removing, expending, distributing, concealing,

destroying, mutilating, damaging, erasing, altering, disposing of, or otherwise diminishing or causing harm to any of the Property, doing any act to interfere with the Receiver from taking control, possession, or management of the Property, or to in any way interfere with the Receiver or the duties of the Receiver, or to interfere with the exclusive jurisdiction of this Court over the Property.  Notwithstanding the above, this Order does not prevent any party, entity, or person from acting or enforcing any rights under the United States Bankruptcy Code.  This paragraph does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

19.    The Court finds that PNC, in seeking to obtain a Receiver, is engaged in a work-out activity, as that term is defined by MCL 324.20101, and its actions in seeking appointment of a Receiver are intended to protect the value and marketability of its collateral.  Further, PNC's actions in seeking the appointment of a receiver do not amount to participation in management as that term is defined in CERCLA, 42 USC § 9601(a)(20).

20.    The entry of this Order is without prejudice to any and all rights of any party to any claim, right, or defense, including construction liens, redemptive rights and all foreclosure rights as to any future proposed sale by the Receiver or the Court, which they have in this case.  This Order is being entered solely for the purpose of preserving and protecting the Property pending further proceedings in the case.

Dated:  December 21, 2011                              s/Denise Page Hood
                                                       DENISE PAGE HOOD
                                                       UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Wednesday, December 21, 2011, by electronic and/or ordinary mail.

                                                       s/Julie Owens
                                                       Case Manager, (313) 234-5160

13